# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

ANDRE MCDOUGAL,                    )
                                   )
                  Petitioner,      )
                                   )
        v.                         )   Civil Action No. 11-1079-GMS
                                   )
STEVEN WESLEY, Warden, and         )
ATTORNEY GENERAL OF                )
THE STATE OF DELAWARE,             )
                                   )
                  Respondents.[1]  )

---

Andre McDougal. *Pro se* petitioner.

Maria Knoll, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware. Counsel for respondents.

---

## MEMORANDUM OPINION

Nov 24, 2014
Wilmington, Delaware

---

[1]Warden Steven Wesley replaced former warden Phil Morgan, an original party to this case. *See* Fed. R. Civ. P. 25(d).


Sleet, District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner Andre McDougal ("McDougal"). (D.I. 3) The State has filed an answer in opposition. For the reasons discussed, the court will deny the petition.

## I.    BACKGROUND

In January 2008, a Delaware Superior Court jury found McDougal not guilty of first degree murder, but was hung on the lesser-included charges of second degree murder, manslaughter, and two weapon charges. *See McDougal v. State*, 31 A.3d 76 (Table), 2011 WL 4921345, at *1 (Del. Oct. 17, 2011). In September, 2008, on the day of his re-trial, McDougal pled guilty to a single charge of manslaughter. *Id.* He was sentenced, effective July 28, 2006, to twenty years in prison, suspended after three years for one year of Level III probation. *Id.* McDougal did not appeal his conviction or sentence.

In January, 2010, the Superior Court found that McDougal had violated the terms of his probation from his 2008 manslaughter conviction. *See McDougal*, 2011 WL 4921346, at *1. McDougal was resentenced to seventeen years at Level V, suspended for seventeen years at Level IV, to be suspended after six months for one year at Level III probation. *Id.*

On November 18, 2010, Detective Smith of the Wilmington Police Department, Operation Safe Streets, was conducting surveillance in the 2300 block of Carter Street, a high crime area considered to be an open air drug market in the City of Wilmington. *See McDougal v. State*, 53 A.3d 302 (Table), 2012 WL 3862030, at *2 (Del. Sept. 19, 2012). Detective Smith's attention was drawn to a male with short hair, wearing a black leather jacket and black pants. This individual, McDougal, entered the block and entered the alleyway on the east side of the street, just north of 2312 Carter Street. After approximately 30 seconds, he walked onto a small

porch located at 2312 Carter Street and sat on the porch steps. Immediately thereafter, another individual, Keith Webb, entered the same porch, staying approximately 2-3 minutes. Webb then sat beside McDougal on the porch steps. At this point, McDougal got up, went onto the porch for a couple of minutes and then returned to sit on the steps. After McDougal sat back down, two unknown males approached him from the north side of Carter Street and McDougal engaged in a hand-to-hand transaction with them. Specifically, it appeared as if one the males handed money to McDougal who handed him an object in return. Additional law enforcement officers were called in to perform the stop of the individuals. Sergeant Villaverde stopped James Hamilton, the male who received the object from McDougal, and seized 4 bags of heroin stamped "Jaguar" from him. Hamilton advised that he had purchased the heroin for $5 a bag from the male in the black leather jacket and short hair (McDougal), giving him a $20 bill. McDougal was also detained and found to have in his possession $20.51. A search of the porch of 2312 Carter Street uncovered 130 small plastic baggies on a chair, each containing blue wax paper baggies stamped "Jaguar" which contained heroin. On the chair, right next to the heroin, the police found a fully loaded .38 revolver, which had been reported stolen. A baseball hat that was also found on the chair was able to easily conceal the contraband. McDougal was arrested and subsequently indicted on charges of trafficking in heroin, possession with intent to deliver heroin, possession of a firearm during the commission of a felony, possession of a firearm by a person prohibited, and receiving a stolen firearm. (D.I. 14 at 2-3); *see McDougal,* 2012 WL 3862030, at *2.

In March 2011, following a contested violation of probation hearing ("VOP" hearing), the Superior Court found that McDougal had violated the terms of his probation, and re-

sentenced him to seventeen years at Level V, suspended after fifteen years for two years at Level III probation. *See McDougal,* 2011 WL 4921345, at *1. The basis of his VOP included the new drug and weapon charges, as well as a missed curfew. McDougal appealed his VOP decision, and the Delaware Supreme Court affirmed the Superior Court's VOP decision and sentence. *Id.*

## II.   GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842-44 (1999); *Picard v. Connor,* 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or

3

(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell*, 543 U.S. at 451 n.3; *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines*, 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting

4

therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## III. DISCUSSION

McDougal's timely filed habeas petition asserts four grounds for relief: (1) he was denied due process of law at his VOP hearing because he was not advised prior to the hearing of his rights to make a statement, call witnesses, and present evidence; (2) his due process rights were violated because his VOP hearing was held prior to his trial and conviction on the underlying

5

criminal charges that formed a partial basis for his violation; (3) the Delaware courts violated his due process rights by sentencing him too harshly for his VOP; and (4) the Department of Correction is denying him adequate access to the law library. For the following reasons, the court concludes that none of McDougal's claims warrant relief.

## A. Claims One and Two: Due Process Violations During VOP Hearing

In claim one, McDougal contends that he was denied due process during his VOP hearing because he was not apprised of his rights to call witnesses and present evidence prior to the hearing. In claim two, McDougal contends that his due process rights were violated because his VOP hearing was held before he was convicted on the charges that formed the basis of that violation. The record reveals that McDougal did not exhaust state remedies for either of these claims because he did not present them to the Delaware Supreme Court when he appealed his VOP. At this juncture, any attempt to pursue further review by presenting these claims in a post-conviction motion would be time barred under Delaware Superior Court Rule 61(i)(1) and procedurally defaulted under Rule 61(i)(3). *Bright v. Snyder*, 218 F. Supp. 2d 573, 580 (D. Del. 2002)(Rule 61(i)(3) would bar the Superior Court from considering the claim because Petitioner did not raise the claim in the proceedings leading to his conviction). Consequently, claims one and two are procedurally defaulted, meaning that the court cannot review their merits absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the claims are not reviewed.

McDougal has not alleged, and the court cannot discern, any cause for his failure to present these two due process claims to the Delaware Supreme Court on appeal from his VOP hearing. In the absence of cause, the court will not discuss prejudice. Nevertheless, McDougal has failed to demonstrate prejudice resulting from the default of either claim. For instance,

6

although McDougal complains that he did not receive notice of the rights he could exercise during the VOP hearing, he was present at the hearing and represented by an attorney, and the transcript indicates that McDougal spoke with his attorney prior to the hearing. In turn, the Delaware Supreme Court held that the hearing was conducted in accordance with the applicable rules and McDougal was afforded the due process to which he was entitled. And finally, as noted by McDougal himself during the hearing, he had a lengthy criminal history. Considering that the hearing at issue was his second violation of probation hearing for his manslaughter conviction, McDougal was presumably well familiar with the rights accorded to him during a revocation proceeding. For all of these reasons, the court concludes that McDougal has failed to demonstrate that he was prejudiced by the default of claim one.

As for McDougal's contention that his VOP hearing was erroneously held before his trial and conviction on the actual underlying charges, McDougal ignores the fact that a revocation proceeding is not a stage of a criminal prosecution, and that different standards of proof apply in a criminal prosecution (requiring proof beyond a reasonable doubt) and a probation revocation hearing (requiring proof by a preponderance of the evidence). *See Stupar v. Crews*, 2014 WL 37681, at *30 (N.D. Fla. Jan. 6, 2014). "Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). As such, probation may revoked if the judge is satisfied that a state or federal law has been violated, and a conviction is not a prerequisite to the revocation of probation. *See United States v. Fleming*, 9 F.3d 1253, 1254 (7th Cir. 1993); *United States v. Markovich*, 348 F.2d 238, 240 (2d Cir. 1965).

Notably, in Delaware, probation can be revoked solely upon the basis of testimony from a witness who has "first-hand knowledge of the events constituting the violations." *Collins v. State*, 897 A.2d 159, 160-61 (Del. 2006). Here, the Superior Court's finding that McDougal violated his probation was premised on McDougal's probation officer's testimony regarding a missed curfew, and also on Detective Smith's testimony describing his first-hand observations of the events leading to McDougal's new criminal charges. Because this testimony was sufficient to satisfy the "preponderance of the evidence" standard for VOP hearings, McDougal cannot demonstrate that he was prejudiced by the default of claim two.

In addition, the court concludes that the miscarriage of justice exception to the procedural default doctrine does not apply to excuse his procedural default, because McDougal has not presented new reliable evidence of his actual innocence.[2] Accordingly, the court will deny claims one and two as procedurally barred from federal habeas review.

### B. Claim Three: Excessive VOP Sentence

---

[2]In July 2014, McDougal filed a motion to amend his petition with four new claims, one of which alleges that the drug evidence used to violate his probation should not have been admitted because it was part of the tainted drug evidence currently being investigated in Delaware's Office of the Chief Medical Examiner ("OCME"). (D.I. 21) To the extent McDougal's allegation of "tainted evidence" regarding the recent "chain of custody" and evidentiary documentation problems in the OCME is an attempt to demonstrate his actual innocence of the underlying drug charges/convictions that formed a partial basis of his VOP, the court is not persuaded. Nothing in the report titled "Investigation of Missing Drug Evidence: Preliminary Findings" that he has included to support his assertion indicates that any of the drug evidence in McDougal's case was tainted or affected by the problematic procedures in the OCME. *See* (D.I. 21 at 5-40). Moreover, although McDougal's motion to amend asserts that his sentence should be reduced because he was acquitted on the gun charge that "played a major part in getting such a lengthy sentence," the record demonstrates that he was not, in fact, acquitted on the gun charge. On direct appeal from his convictions on the underlying drug and weapon charges, the Delaware Supreme Court explained that "the jury's verdict of guilty on the charge of possession of a firearm by a person prohibited was proper given that McDougal stipulated to his guilty on that charge." *McDougal*, 2012 WL 3862030, at *3. Given these circumstances, the court concludes that McDougal has failed to provide "new reliable evidence" of his actual innocence sufficient to excuse his default of claims one and two under the miscarriage of justice exception.

In claim three, McDougal contends that his sentence was excessively harsh because the Superior Court improperly considered the State's assertion that McDougal "got real lucky [] and [obtained] a real short sweet deal" by pleading guilty to a single count of manslaughter in 2008. (D.I. 3 at 6) On appeal, the Delaware Supreme Court rejected this contention as meritless, and held that there was "more than ample support" for McDougal's sentence. *McDougal*, 2011 4921345, at *1. For the following reasons, the court concludes that claim three does not warrant relief.

"[T]he Eighth Amendment prohibits the imposition of a sentence that is grossly disproportionate to the severity of the crime." *Ewing v. California*, 538 U.S. 11, 21 (2003). However, a "state court's sentencing decision and claims arising out of that decision are generally not constitutionally cognizable, unless the sentencing decision exceeds the statutory limits or is wholly unauthorized by law." *Laboy v. Carroll*, 437 F. Supp. 2d 260, 263 (D. Del. 2006). Pursuant to Delaware law, once a VOP is established, the Superior Court may order the violator to serve any sentence that was originally suspended, less time served. *See* 11 Del. Code Ann. § 4334(c). Here, at the time of McDougal's second VOP, the balance of Level V time remaining on his manslaughter sentence was seventeen years. Thus, the Superior Court's VOP sentence of seventeen years of Level V time, suspended after fifteen years for two years at Level III, did not exceed the statutory limits.

Moreover, nothing in the record supports McDougal's contention that the Superior Court issued a harsher sentence for his VOP than it would have issued merely because he received such a "sweet short deal" for his manslaughter conviction. Significantly, the transcript of the VOP hearing reflects that the Superior Court considered: (1) McDougal's criminal record (which included his prior convictions for first degree assault, weapon violations, and an escape after

9

conviction); (2) the fact that McDougal's 2011 VOP was his second VOP in connection with his

manslaughter conviction; and (3) the fact that McDougal's violation was based on both new drug

and weapon charges and a curfew violation. Given these circumstances, the court concludes that

the Delaware Supreme Court reasonably determined the facts when it held on appeal that

McDougal's sentence was not unduly harsh and that the sentence did not amount to an abuse of

discretion by the sentencing judge.

Accordingly, the court will deny claim three for failing to assert an issue cognizable on

federal habeas review.

**C. Claim Four: Lack of Access to the Law Library**

A federal court does not have jurisdiction to provide habeas relief unless a petitioner

alleges that his conviction violates the Constitution, laws, or treaties of the United States. *See* 28

U.S.C. § 2254. In claim four, McDougal asserts that he is being denied access to the law library

and library materials; he does not, however, "seek to invalidate the duration of [his]

confinement." *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005). As such, the court will deny claim

four for lack of jurisdiction because it fails to present an issue cognizable on habeas review.

**D. Motion to Amend**

In July 2014, McDougal filed a motion to amend his petition with the following four

claims: (1) the drug evidence used to violate his probation should not have been admitted

because it was part of the tainted drug problem currently being investigated in Delaware's Office

of the Chief Medical Examiner; (2) his due process rights were violated because the sentencing

judge failed to state the aggravating or mitigating factors that were considered in determining his

VOP sentence; (3) the attorney who represented him during the VOP hearing provided

ineffective assistance; and (4) his sentence should be reduced because he was subsequently

acquitted of the gun possession charge that formed a partial basis for his violation. (D.I. 21)

To the extent the first claim in the motion to amend is McDougal's attempt to establish

his actual innocence on the basis of newly discovered evidence, the court will permit the

amendment but deny the claim as meritless. As a general rule, a claim of actual innocence, if

proven by new reliable evidence, permits a court to review the merits of an otherwise defaulted

claim and acts as a gateway for excusing procedurally defaulted claims. *See House*, 547 U.S. at

554-55. Whether or not a freestanding claim of actual innocence is cognizable on federal habeas

review remains an open question in Supreme Court jurisprudence. *Id.* Nevertheless, even if a

stand-alone claim of actual innocence were cognizable on § 2254 review, the threshold showing

of actual innocence would be high, requiring a movant to demonstrate (a) "new reliable

evidence" that was previously unavailable and establishes that it is more likely than not that no

reasonable juror would have convicted him, and (b) that he exercised reasonable diligence in

bringing his claim. *See Herrera v. Collins*, 506 U.S. 390, 417 (1993); *Schlup v. Delo*, 513 U.S.

298, 324, 327-28 (1995); *Reed v. Harlow*, 448 F. App'x 236, 238 n.2 (3d Cir. 2011). As

discussed earlier in the opinion, nothing in the report titled "Investigation of Missing Drug

Evidence: Preliminary Findings" that McDougal has included to support his allegation of actual

innocence indicates that the drug evidence in McDougal's case was tainted or affected by the

problematic procedures in Delaware's OCME. *See* (D.I. 21 at 5-40). Thus, the court will deny

McDougal's "actual innocence" claim because it does not satisfy the *Schlup* standard.

Nevertheless, the court will deny the motion to amend to the extent McDougal seeks to

add the remaining three claims to his petition. The motion to amend was filed well-outside the

one-year limitations period applicable to § 2254 applications (and more than two years after the

State filed its answer), and these three entirely new claims do not relate back to the claims asserted in the original timely § 2254 petition. Accordingly, the court will not permit the amendment.[3] *See* Fed. R. Civ. P. 15(a), (c); *see also Mayle v. Felix*, 545 U.S. 644 (2005); *United States v. Duffus*, 174 F.3d 333, 336-37 (3d Cir. 1999)(finding that a new ineffective assistance of counsel claim asserted in a motion to amend after AEDPA's limitations period had already expired did not relate back to an ineffective assistance of counsel claim asserted in the original timely habeas petition); *United States v. Thomas*, 221 F.3d 430, (3d Cir. 2000)("Under Fed. R. Civ. P. 15(c), an amendment . . . clarif[ying] or amplif[ying] a claim or theory in the petition may, in the District Court's discretion, relate back to the date of the petition if and only if the petition was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case").

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2);

---

[3]Even if the court were to liberally construe the motion to amend's assertion regarding defense counsel's failure to inform McDougal of his right to call witnesses during the VOP hearing as relating back to claim one in his original petition, the court could not review the merits of the allegation because this particular ineffective assistance of counsel allegation is procedurally barred. McDougal never presented this ineffective assistance of counsel claim to the Delaware Supreme Court, *See McDougal*, 2011 WL 492134, at *1-*2, and any attempt to present it to the Delaware state courts in a new Rule 61 motion would be time-barred under Rule 61(i)(1) and procedurally defaulted under Rule 61(i)(3). As such, the claim is procedurally defaulted, and McDougal's failure to assert any cause or prejudice to excuse that default prevents the court from reviewing the claim on its merits.

12

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.*

The court has concluded that McDougal's petition fails to warrant federal habeas relief, and is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V.    CONCLUSION

For the reasons stated, McDougal's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue.